## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**MARGARET SANCHEZ,**

        **Plaintiff,**

**v.**                                         **Case No:  6:11-cv-1745-Orl-22GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT:

Margaret Sanchez (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her application for benefits (hereafter "Application"), which alleged a disability onset date of September 28, 2007.  Doc. No. 1.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   MEDICAL AND OPINION EVIDENCE

### A.  Kristina Belostocki, M.D.

Kristina Belostocki, M.D., is Claimant's treating physician and began treating her for complaints of bilateral hand and wrist stiffness with swelling.  R. 333-34.  During her September 29, 2006, examination, Dr. Belostocki found "mild tenderness over right subacromial bursa, no effusion, warmth, or erythema, negative impingement" and fullness in the second through fifth

PIP joints bilaterally.  R. 335.[1]  Dr. Belostocki indicated that Claimant suffers from carpal tunnel syndrome, polyarthralgia, myalgia and possible rheumatoid arthritis and polyarthritis.  R. 335. The hand and wrist x-rays of the same date revealed no evidence of inflammatory arthropathy of the hands or wrists.  R. 251.  On October 25, 2006, Dr. Belostocki reiterated these same findings and diagnoses, but also noted that Claimant had good bilateral grip and her x-rays were negative. R. 333.  On August 16, 2007, Claimant complained of pain in her left thumb and index finger with occasional locking, as well as pain in her right third digit.  R. 330.  Dr. Belostocki noted "mild tenderness over right subacromial bursa, no effusion, warmth, or erythema, negative impingement," no synovitis and good bilateral grip.  R. 330.  The radiographs of Claimant's hands and wrists of the same date were unremarkable.  R. 253.  The radiograph of Claimant's spine revealed moderate to severe degenerative disc disease at C5-6.  R. 252.

On November 6, 2008, Dr. Belostocki noted that an MRI of Claimant's spine revealed narrowing of the left neural foramen C5-6.  R. 328.[2]  Dr. Belostocki also noted that the MRI of Claimant's left hand revealed "mild tendinosis and tenosynovitis of the flexor pollicis longus tendon."  R. 328.  Dr. Belostocki observed "swelling second-fifth PIP joints bilaterally with diminished grip."  R. 328.  The radiographs of Claimant's hands and wrists of the same date revealed osteoarthritic changes of Claimant's DIP joints bilaterally.  R. 257.[3]  On December 4, 2008, Dr. Belostocki indicated that Claimant was complaining of forearm pain with wrist splints. R. 326.  Dr. Belostocki indicated that Claimant did not have synovitis.  R. 326.

On February 28, 2009, Dr. Belostocki opined in a medical source statement that Claimant's ability to do work related activities was not affected by any mental impairment(s).  R.

---

[1]  PIP joints refer to proximal interphalangeal joints.  Stedman's Medical Dictionary 908 (26th Ed.1995).

[2]  MRI refers to magnetic resonance imaging.  Stedman's Medical Dictionary 1133 (26th Ed.1995).

[3]  DIP joints refer to distal interphalangeal joints.  Stedman's Medical Dictionary 906 (26th Ed.1995).

290-93.  On March 9, 2009, Claimant reported that an "EMG/NCS" revealed severe carpal tunnel syndrome, but that she was reluctant to see a hand surgeon.  R. 324.  Dr. Belostocki indicated that Claimant exhibited "OA changes bilateral hands," but did not have synovitis.  R. 324.

On July 28, 2009, Dr. Belostocki completed a medical source statement, which set forth her opinions about Claimant's physical ability to do work related activities.  R. 438-43.  Dr. Belostocki indicated that Claimant can lift and carry ten pounds frequently and twenty pounds occasionally.  R. 438.  Dr. Belostocki opined that Claimant can do each of following separately at one time without interruption: sit four hours; stand one hour; and walk two hours.  R. 439.  Dr. Belostocki opined that Claimant can sit six hours, stand two hours and walk two hours in an eight-hour workday.  R. 439.  With regard to Claimant's extremities, Dr. Belostocki indicated that Claimant can continuously operate foot controls; frequently handle, finger and feel; occasionally reach; and never push or pull.  R. 440.  Dr. Belostocki opined that Claimant can occasionally balance, stoop, kneel and climb stairs, ramps, ladders or scaffolds, but can never crouch or crawl.  R. 441.

With regard to environmental limitations, Dr. Belostocki opined that Claimant can frequently be exposed to dust, odors, fumes and pulmonary irritants; occasionally move mechanical parts, operate a motor vehicle and be exposed to extreme cold, extreme heat, vibrations, humidity and wetness; and never be exposed to unprotected heights.  R. 442.  Dr. Belostocki also opined that Claimant can perform activities like shopping; can travel alone; can walk a block at a reasonable pace on rough or uneven surfaces; can use public transportation; can climb a few steps at a reasonable pace while using a hand rail; can walk without using a

wheelchair, walker, canes or crutches; can prepare a simple meal and feed herself; can care for her personal hygiene; and can sort, hand and use paper or files.  R. 443

On July 7, 2010, Dr. Belostocki completed an arthritis residual functional capacity questionnaire.  R. 473-77.  Dr. Belostocki indicated that she sees Claimant every three months and Claimant suffers from polyarthritic osteoarthritis, cervical radiculopathy and carpal tunnel syndrome.  R. 473.  Dr. Belostocki stated that Claimant suffers from pain, exhibits objective signs of tenderness and muscle spasm, and Claimant's pain is often severe enough to interfere with her attention and concentration.  R. 473-74.  Pain notwithstanding, Dr. Belostocki indicated that Claimant can still perform low stress jobs.  R. 474.  Dr. Belostocki opined that Claimant can sit or stand one hour at a time before needing to get up, sit down or walk.  R. 475.  Dr. Belostocki opined that Claimant can stand/walk less than two hours and sit about four hours in an eight-hour workday.  R. 475.  Dr. Belostocki indicated that Claimant needs a job that permits shifting from sitting, standing or walking at will, and will sometimes need to take unscheduled breaks.  R. 475.  Dr. Belostocki stated that Claimant can rarely lift and carry less than ten pounds.  R. 475.  Dr. Belostocki opined that Claimant can rarely twist, stoop, crouch and climb ladders or stairs.  R. 476.  Finally, Dr. Belostocki opined that Claimant is significantly limited in repetitively reaching, handling or fingering, such that she can only grasp, turn or twist objects and perform fine finger manipulations twenty percent of the time.  R. 476-77.

**B.  Huiying Yu, M.D.**

On October 30, 2008, Huiying Yu, M.D., examined Claimant for complaints of numbness and tingling in her hands and feet, as well as neck and lower back pain.  R. 247-48.  Dr. Yu indicated that Claimant's symptoms could be caused by cervical radiculopathy, carpal tunnel syndrome, peripheral neuropathy or lumbosacral radiculopathy.  R. 248.  Dr. Yu suggested

Claimant get an EMG.  R. 249.[4]  Dr. Yu noted that Claimant stated she could "tolerate her symptoms at this point."  R. 249.  Dr. Yu reviewed the results of the EMG and indicated that there is "evidence of bilateral moderate median neuropathy at the wrists.  It is slightly worse on the right."  R. 409.

**C.  Sharon Revan, M.D.**

On May 11, 2009, Sharon Revan, M.D., a consultative examiner, conducted an internal medicine examination.  R. 400-04.  Dr. Revan reviewed Claimant's medical history and her physical examination was essentially normal.  R. 400-03.  Dr. Revan noted that Claimant's hand and finger dexterity was intact and her grip strength was 5/5.  R. 403.  Dr. Revan opined that Claimant has no "limitations with the upper extremities for fine and gross motor activity.  There are mild limitations with walking distances, climbing stairs, and prolonged physical activities such as standing and sitting due to her joint pain.  There are mild limitations with personal grooming and ADLs secondary to her shoulder pain."  R. 403.

## II.  ADMINISTRATIVE PROCEEDINGS

Claimant filed her Application on February 5, 2009.  R. 170.  On June 30, 2009, the Application was denied.  R. 94.  On July 22, 2009, Claimant requested a hearing before an Administrative Law Judge (hereafter "ALJ").  R. 110-11.  The hearing was held on July 21, 2010.  Claimant, Dr. Gussaf and a vocational expert testified.  R. 32-91.  Claimant's testimony, as set forth below, reflects that she is a 60-year old woman whose last job was data entry for the U.S. Open from July to September 2009.  R. 32, 35.  Claimant has a high school education, one adult son, three grandchildren and a great-granddaughter.  R. 35-37.  Claimant baby sits her nine year old great-granddaughter in the summer, driving to the Bronx, New York.  R. 37.  Claimant was collecting unemployment checks until they expired in March 2010.  R. 38.  Claimant has not

---

[4] EMG refers to electromyogram.  Stedman's Medical Dictionary 560 (26th Ed.1995).

looked for work after March 2010, because she is taking a lot of medication and her rheumatoid arthritis has gotten worse. R. 38-39.

Claimant testified that she has had rheumatoid arthritis for over four years and was able to work at the U.S. Open because the job did not require a lot of typing and she only worked a few hours per day. R. 39-40. Claimant stated that she can sit for two hours and might be able to work as a receptionist if she was permitted to sit or stand at will. R. 42-43. Claimant indicated she worked as a receptionist at TiCore for less than a year, ending in September 2007 because the office closed. R. 44, 81. Claimant indicated she answered phones and typed information for title paperwork. R. 81-82. Afterwards, Claimant received public assistance and looked for work until working for the U.S. Open. R. 45.

Claimant testified that she also suffers from carpal tunnel syndrome, which she has had for four years. R. 47. Claimant indicated that she has not had the recommended surgery and it has gotten worse. R. 47-48. Claimant stated her carpal tunnel syndrome prevents her from holding heavy items, but she can carry ten pounds with both hands. R. 48. Claimant takes Melacot for her carpal tunnel syndrome. R. 49. Claimant also takes Celebrex, Lisinopril, Cyclobenzaprine, Meclizine and Tylenol with codeine. R. 49-50. Claimant stated she was prescribed Prozac by her primary doctor, Dr. Hernanda, because she has been depressed about being out of work and not having a steady residence. R. 51-52. Claimant indicated that she has been living with her niece and previously lived with her son until she moved out due to conflicts with his wife. R. 52-53.

Claimant testified that she used to see a psychiatrist in 2004 or 2005, after her mother died. R. 55. Claimant sees Dr. Belostocki for her rheumatoid arthritis. R. 57. Claimant has arthritis in her shoulders, neck, arm, hands and lower back. R. 58. Claimant stated she cooks,

grocery shops, goes to church, reads the newspaper, makes the beds, washes dishes, sweeps, dusts and cleans the bathroom.  R. 58, 60-62.  Claimant testified that she suffers from vertigo and takes Meclizine.  R. 66.  Claimant indicated that she has problems with her hands where she cannot open jars sometimes and drops pots that are filled.  R. 69-70.  Claimant indicated that it takes her a long time to write because she has to stop due to pain.  R. 70.  Claimant also has difficulties with tying big bows and buttoning clothes.  R. 72.

Dr. Gussaf testified that Claimant's impairments of carpal tunnel syndrome, inflammatory arthritis and spinal narrowing of the left neural foramen C5-6 do not individually meet a listing.  R. 77-79.  Dr. Gussaf deferred to the ALJ to determine whether the impairments in combination meet or equal a listing.  R. 79-80.  Dr. Gussaf pointed out that Claimant drives a car, which is a complex procedure and requires being adept at handling one's extremities and vision.  R. 83.

The vocational expert testified that Claimant's past work is classified as a receptionist, a sedentary, semi-skilled position.  R. 85.  The vocational expert testified that the Dictionary of Occupational Titles provides that receptionists must be able to frequently reach, handle, and finger.  R. 87.  The vocational expert testified that an information clerk, as opposed to a receptionist, only requires occasional reaching, handling and fingering, and with the skills acquired in her past work as a receptionist the Claimant could also perform work as an information clerk.  R. 85, 87.  The vocational expert stated that other jobs exist, such as a surveillance system monitor and callout operator, which an individual with acquired skills as a receptionist could perform with only occasional hand and finger movements.  R. 88-89.

On July 30, 2010, the ALJ issued his decision.  R. 17-25.  The ALJ found that Claimant has not engaged in substantial gainful activity since her alleged disability onset date, September

28, 2007.  R. 19.   The ALJ found that Claimant suffers from the severe impairments of

rheumatoid arthritis, carpal tunnel syndrome and Hepatitis C.  R. 19.  The ALJ found that

Claimant's severe impairments do not meet or medically equal one of the listed impairments in

20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 20.  The ALJ found that Claimant has the

residual functional capacity (hereafter "RFC") to perform the full range of light work.  R. 20.

 In reaching his RFC finding, the ALJ reviewed Claimant's testimony, Dr. Yu's records,

reports from Winthrop Radiology Associates, Dr. Belostocki's treatment records and Dr.

Revan's consultative examination report.  R. 20-23.  After summarizing the evidence, the ALJ

stated the following:

> The claimant alleges she experiences pain and is able to perform
> limited physical activity.   Although radiological examination
> revealed some positive findings of the hands and the cervical spine
> and electrodiagnostic studies of the extremities in November 2008
> revealed positive findings, the findings on examination by Dr. Yu
> in October 2008, the findings of Dr. Belostocki, the assessment of
> Dr. Belostocki dated July 28, 2009, and the findings and
> assessment of the consultative examiner contradict the claimant's
> allegations.  Furthermore, despite the claimant's allegations, she
> drives, which requires the use of her hands, cooks, cleans, irons,
> does laundry, shops, attends church, reads, watches television,
> goes out to eat, and visits.
>
> . . . .
>
> In terms of the claimant's allegations, they are contradicted by
> findings of Dr. Yu, Dr. Belostocki and the consultative examiner,
> Dr. Belostocki's assessment of July 28, 2009, the consultative
> examiner's assessment, and the claimant's activities, and are not
> credible to the extent she alleges.   The claimant's allegations
> regarding the hands were considered but they are contradicted by
> the normal neurological findings and the claimant's ability to
> drive.  Furthermore, the claimant's treating source concluded the
> claimant could use her hands for handling, fingering and feeling
> and the consultative examiner related that hand and finger
> dexterity was intact and grip strength was 5/5 bilaterally and the
> claimant could perform fine and gross motor activity.
> Additionally, the claimant reads, watches television, and performs

daily activities, which indicate she does not experience pain to the extent she alleges and is not as limited as she alleges.

As for the opinion evidence, Dr. Kristina Belostocki, a treating source, indicated on July 7, 2010, that the claimant was capable of low stress jobs and indicated the claimant was unable to perform a full range of sedentary work.  However, it is noted there are inconsistencies in the assessment as Dr. Belostocki indicated the claimant could sit one hour at a time but could only sit about four hours in an eight-hour day and could stand one hour at a time but could only stand/walk less than two hours in an eight-hour day. Furthermore, the only positive objective findings Dr. Belostocki noted in the report were muscle spasm and tenderness.  Therefore, Dr. Belostocki did not provide findings to support the assessment that the claimant could perform less than a full range of sedentary work and that assessment is not given any weight.  In an assessment dated July 28, 2009, Dr. Belostocki indicated the claimant could perform a full range of light work. This assessment is consistent with the findings Dr. Belostocki indicated were present on examination and with the findings of Dr. Yu and the findings and assessment of the consultative examiner.  Therefore, Dr. Belostocki's assessment that the claimant retains the ability to perform light work is consistent with substantial evidence including the claimant's activities that include driving and is given great weight.

R. 23-24 (internal citations omitted) (emphasis added).  Thus, the ALJ found that Claimant's subjective allegations regarding her limitations were contradicted by the medical evidence and her activities of daily living.  R. 23.  The ALJ also rejected Dr. Belostocki's July 7, 2010 opinion as internally inconsistent and not supported by objective findings.  R. 24.[5]  The ALJ found that Dr. Belostocki's July 28, 2009, opinion indicated that Claimant could perform the full range of light work and was consistent with the record as a whole.  R. 24.  Therefore, the ALJ gave great weight to Dr. Belostocki's July 28, 2009, opinion and adopted it as a basis for finding the Claimant retains the RFC to perform the full range of light work.  R. 24.[6]

---

[5] Claimant does not challenge the ALJ's decision to give little weight to Dr. Belostocki's July 7, 2010, opinion.

[6] The ALJ also stated that the RFC assessment is supported by the findings of Drs. Raven and Yu, and Claimant's reported activities of daily living.  R. 24.

Based upon the ALJ's RFC assessment for a full range of light work, at step-four, the ALJ found that Claimant can perform her past relevant work as a receptionist because it is only a semi-skilled sedentary job.  R. 24.  Accordingly, the ALJ determined that Claimant is not disabled. R. 25.

## III.    LEGAL STANDARDS

### A.  ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C. REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply

correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[7]

---

[7] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

## IV.   <u>ANALYSIS</u>

Claimant presents what is really two arguments on appeal.  Doc. No. 24 at 12, 15-17.[8]

First, Claimant maintains that the ALJ failed to provide any analysis of how he reached his RFC

assessment.  Doc. No. 24 at 12.  Second, Claimant argues that the ALJ's RFC for a full range of

light work is not supported by substantial evidence because there is no opinion in evidence

supporting the RFC and the ALJ's RFC fails to account for limitations caused by Claimant's

severe impairment of carpal tunnel syndrome.  Doc. No. 24 at 15-17.     Thus, Claimant's

arguments all relate to the ALJ's RFC assessment.

Social Security Ruling (hereafter "SSR") 96-8p governs the Commissioner's RFC

assessment and states:

> The RFC assessment must first identify the individual's functional
> limitations or restrictions and assess his or her work related
> abilities on a function-by-function basis, including the functions in
> paragraphs (b), (c), and (d) of 20 CFR 404.1545. . . .  Only after
> that may RFC be expressed in terms of the exertional levels of
> work, sedentary, light, medium, heavy, and very heavy.

*Id.*[9]  Thus, an ALJ must first identify a claimant's functional limitations or restrictions and assess

the claimant's work related ability on a function-by-function basis before stating the exertional

level of work a claimant can perform.  In the policy interpretation appended to SSR 96-8p, the

Commissioner requires all relevant evidence in the record, including medical history, medical

findings, treatment, daily activities and lay evidence, to be considered in making the RFC

determination.  *Id.*

20 C.F.R. § 404.1545(b) provides that the following physical functions will be assessed

---

[8] In Claimant's brief the second argument is broken down into two distinct arguments.

[9] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.  Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference. . . ."  *Klawinski v. Comm'r of Soc. Sec.*, 391 F. Appx. 772, 775 (11th Cir. 2010) (citations omitted).

in determining an individual's RFC: "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions  (including manipulative or postural functions, such as reaching, handling, stooping or crouching) . . . ." *Id.*  SSR 96-8p further states that "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." *Id.*  Thus, before stating a claimant's RFC in terms of sedentary, light, or heavy, an ALJ must first assess the claimant's physical abilities on a function-by-function basis, including a claimant's ability to sit, stand, and walk.  *See* SSR 96-8p; 20 C.F.R. § 404.1545(b).

In addition to determining the exertional level of work a claimant can perform, the RFC should also account for any nonexertional limitations.  *See Vuxta v. Comm'r of Soc. Sec.*, 194 F. Appx. 874, 877 (11th Cir. 2006) (unpublished) ("RFCs can contain both exertional and nonexertional limitations.").[10]  Nonexertional limitations are accounted for when a claimant is restricted to skilled, semiskilled or unskilled work.  *See id.* at 878.

### A.  Whether the ALJ Explained RFC Determination.

In her first argument, Claimant asserts that the ALJ "provides no analysis of how he reached the residual functional capacity that Claimant was capable of performing the <u>medium work with no concentrated exposure to respiratory irritants</u>."  Doc. No. 24 at 12 (emphasis added).  The ALJ's RFC assessment was not "medium work with no concentrated exposure to respiratory irritants."  *Compare* Doc. No. 24 at 12 *with* R. 20.  The ALJ's RFC assessment was that Claimant can perform the full range of light work.  R. 20.  Nevertheless, assuming that Claimant is arguing that the ALJ did not provide any analysis of how he determined that Claimant can perform the full range of light work, this argument is without merit.  In

---

[10] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

determining Claimant's RFC, the ALJ thoroughly discussed Claimant's testimony, Claimant's allegations concerning her impairments, x-ray and radiographic evidence, as well as the medical evidence and opinions of Drs. Yu, Revan and Belostocki.  *See* R. 20-24.  Accordingly, it is recommended that the Court reject Claimant's first argument.

**B.  Whether the ALJ's RFC Determination is Supported by Substantial Evidence.**

Claimant's second argument asserts the following:

> There is no explanation or residual functional capacity in the file that states Claimant is capable of the full range of light level work given her severe impairment of carpal tunnel syndrome with diminished manual dexterity of both hands.  The ALJ even MISSTATES the record . . . stating that Dr. Belostocki's RFC assessment supported his own finding that Claimant was capable of the full range of light work.

> This statement is false, as Dr. Belostocki stated in his assessment that Claimant could only OCCASIONALLY use both hands in reaching all over and overhead; Claimant could handle, finger, and feel with both hands only FREQUENTLY; and finally could NEVER push or pull with either hand.  The ALJ's RFC is not based on substantial evidence.

Doc. No. 24 at 15-16 (internal citation omitted).  Thus, Claimant argues that the ALJ's RFC for a full range of light work, which was based on Dr. Belostocki's July 28, 2009 opinion, is not supported by substantial evidence because Dr. Belostocki did not opine that Claimant can perform a full range of light work.  *Id.*

The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, <u>a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.</u> If someone can do light work, we determine that he or she can also do sedentary

> work, unless there are additional limiting factors such as loss of
> fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added).  In order for a person to be capable of performing the full range of light work a claimant must be able to perform all of the above-referenced activities. Thus, the individual must be able to do a good deal of walking or standing and be able to do some pushing and pulling of arm or leg controls.  *Id*.  ("To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.").   SSR 83-10 clarifies that a "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," and "[s]itting may occur intermittently during the remaining time."  SSR 83-10 (emphasis added).

In this case, the ALJ found that Claimant is capable of the full range of light work, giving great weight to Dr. Belostocki's July 28, 2009 opinion.  R.  20, 24.  The ALJ stated that Dr. Belostocki "indicated the [C]laimant could perform the full range of light work."  R. 24. However, Dr. Belostocki's opinion clearly states that Claimant is only capable of standing for two hours and walking for two hours in an 8-hour workday.  R. 439.  Thus, Dr. Belostocki opined that Claimant can only stand and walk for a total of 4 out of 8 hours in a workday.  R. 439.   As set forth above, SSR 83-10 provides that to be capable of performing a full range of light work an individual must be capable of standing and walking for a total of approximately 6 hours in a workday.  *Id*.  Because Dr. Belostocki opined that Claimant could only stand and walk a total of 4 hours, Dr. Belostocki's opinion does not indicate that Claimant can perform the full range of light work.  R. 439.  Furthermore, Dr. Belostocki's finding that Claimant can never push or pull (R. 441) conflicts with the definition of light work because for those jobs which require a good deal of sitting an individual must be able to do some pushing and pulling with arm or leg controls.  20 C.F.R. § 404.1567(b).  Thus, the ALJ's RFC for a full range of light work is not

supported by substantial evidence.  Accordingly, it is recommended that the Court reverse the Commissioner's decision and remand the case for further proceedings.[11]

Claimant also argues that the ALJ failed to "address and explain in his residual functional capacity what impact the [carpal tunnel syndrome] would have on Claimant's ability to perform jobs in the national or regional economies.  The ALJ fails to assign any restrictions or limitations presumed to be caused by the severe impairment."  Doc. No. 24 at 17.  Claimant contends that because the ALJ found carpal tunnel syndrome to be a severe impairment, it "would be expected to diminish the full range of light work established by the ALJ in his light exertional RFC."  Doc. No. 24 at 17.  As set forth above, the ALJ's RFC for a full range of light work is fatally flawed because it is based on a misperception of Dr. Belostocki's opinion and remand is required.  On remand the ALJ must consider the entire record in determining Claimant's RFC.  Therefore, consideration of Claimant's last remaining point here is unnecessary.

## V.   **CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that:

1.      The final decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g); and

2.      The Clerk be directed to enter judgment for Claimant and close the case.

---

[11]  The Court has considered whether this error is harmless.  *See Majkut v. Comm'r of Soc. Sec.*, 394 F. Appx. 660, 665 (11th Cir. 2010) (misstatement of fact "may constitute harmless error if the ALJ applies the proper legal standard."); *see also Washington v. Astrue*, No. 8:08-CV-1614-T-27GJK, 2009 WL 2949034 at *14 (M.D. Fla. Sept. 14, 2009) (single erroneous statement does not require remand).  The error is not harmless because it is integral to the ALJ's RFC finding.  *See White v. Comm'r of Soc. Sec.*, No. 6:09-cv-1208-Orl-28GJK, 2010 WL 3467413 at *15 (M.D. Fla. Aug. 3, 2010) (misstatement of fact not harmless error when it substantially affects ALJ's ultimate conclusion).  Moreover, the ALJ relied upon the RFC to find that Claimant can perform past relevant work as a receptionist because it is a sedentary job.  R. 24.  Dr. Belostocki's opinion, which was given great weight by the ALJ, states that Claimant can only occasionally reach.  R. 440.  However, the VE testified that the Dictionary of Occupational Titles provides that to be capable of working as a receptionist an individual must be able to frequently reach.  Accordingly, even if the error in determining the Claimant's RFC is harmless, the ALJ's finding at step-four is not supported by substantial evidence.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on January 2, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk
Mail or Deliver Copies of this order to:

Adam S. Neidenberg
7067D West Broward Blvd.
Plantation, FL 33317

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Kristin M. Rogers, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable David Z. Nisnewitz
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224